**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JACQUELINE FIORITO, | ) |
|     **Plaintiff,** | ) |
| | ) |
|     **v.** | )    **Case No. 1:17-cv-731** |
| | ) |
| **METROPOLITAN AVIATION,** *et al.*, | ) |
|     **Defendants.** | ) |

## MEMORANDUM OPINION

After a now ended and tumultuous five-year period of employment, plaintiff brings this Title VII[1] and Virginia common law employment discrimination action against her former employer and related entities.  At issue now are two motions for summary judgment and a motion to consolidate: first, defendants ("Metropolitan Aviation"), Metropolitan Jets ("Metropolitan Jets"), and Alan Cook ("Cook") seek partial summary judgment on all but one of plaintiff's claims, namely plaintiff's common law wrongful termination claim; second, defendant Metro Aire LLC's ("Metro Aire") seeks summary judgment on all six of plaintiff's claims; and finally, all defendants move to consolidate this case with plaintiff's husband's case.  As these motions have now been fully briefed and argued, the matter is now ripe for disposition.

---

[1] 42 U.S.C. § 2000e, *et seq.*

Plaintiff, Jacqueline Fiorito, is a resident of Virginia and the former Chief Operating Officer and Executive Vice President of defendant Metropolitan Aviation. Defendant Metropolitan Aviation, a Virginia corporation, manages a fleet of privately owned jets available for charter worldwide. Defendant Cook is the founder, Chief Executive Officer and sole owner of Metropolitan Aviation, LLC and Metropolitan Jets. Defendant Metro Aire is a Virginia corporation that was formed on January 30, 2017. Michele Lanfrank, the sole member and owner of Metro Aire, explained that she started Metro Aire "to do something to extend the brand of Metropolitan Aviation to try to bring in revenue from other areas" and to provide a bank account where Metropolitan Aviation funds could be deposited. Lanfrank Dep. 5:1-13. This bank account was then used to store income generated from Metropolitan Aviation flights, to pay wages to Metropolitan Aviation employees, and to pay Metropolitan Aviation expenses for approximately six months. In August 2017, Metropolitan Aviation was able to open its own bank account, and shortly thereafter, Lanfrank made clear that Metro Aire stopped receiving and holding Metropolitan Aviation's funds. Lanfrank testified that Metro Aire has been "basically inactive" since that time. Lanfrank Dep. 12:13-20.

---

[2] The facts recited here are derived from the parties' essential compliance with Local Rule 56(B) and the Rule 16(b) Scheduling Order. That Rule and Order require that a motion for summary judgment contain a separately captioned section listing in numbered-paragraph form all material facts as to which the movant contends no genuine dispute exists. *See Jacqueline Fiorito v. Metropolitan Aviation*, No. 1:17-cv-731 (E.D. Va. Mar. 7, 2018) (Order). The Local Rule and Scheduling Order further provide that the non-movant must include "a separately captioned section within the brief addressing, in numbered-paragraph form corresponding to the movant's section, each of the movant's enumerated facts and indicating whether the non-movant admits or disputes the fact with appropriate citations to the record." *Id.* Finally, the Scheduling Order states that the "Court may assume that any fact identified by the movant as undisputed in the movant's brief that is not specifically controverted in the non-movant's brief in the manner set forth above is admitted for the purpose of deciding the motion for summary judgment." *Id.* Both parties largely complied with these requirements: defendant submitted a separately captioned section of undisputed facts and plaintiff responded to defendants' facts in her brief in opposition. Plaintiff, however, also identified additional contested facts in her opposition to defendant's summary judgment motion. In sum, the following statement of facts is based largely on the parties' statements of undisputed material facts and their respective responses. Disputed facts are noted and are either immaterial or are assumed in favor of the movant.

The events at issue here occurred after plaintiff began her employment with Metropolitan Aviation in 2011:

- During the first several years of plaintiff's employment with Metropolitan Aviation, Plaintiff, who was estranged from her husband David Fiorito ("Mr. Fiorito"), became involved in an intimate consensual relationship with Cook.

- By 2014, Cook began harassing plaintiff by accusing her of having sexual relationships with other men, threatening her with termination, and calling her derogatory names. Plaintiff testified in her deposition that at this point, she began to distance herself from Cook by resisting his physical advances and voicing concerns about his behavior.

- Plaintiff also reported these incidents to Metropolitan Aviation's Human Resources Director Penny Sax ("Sax"). For example, plaintiff reached out to Sax on September 22, 2014, asking for help with Cook. In October 2014, after plaintiff and Cook had a verbal altercation at the Metropolitan Aviation office, plaintiff again reached out to Sax about Cook.

- The parties dispute exactly when and how the relationship between plaintiff and Cook ended. At her deposition, plaintiff testified that in January 2015, she "agreeably terminated" her relationship with Cook and that at that time, the two agreed to move forward without a physical relationship. Pl. Jan. 11, 2018 Dep. 71:4-13. At the same time, the record also discloses that plaintiff's and Cook's personal relationship continued in some capacity throughout 2015. For example, in 2015, plaintiff asked Cook to move into her home, invited him over to meals and for weekend stays, and went on a vacation to the Bahamas with him.

- On January 15, 2015, plaintiff emailed Sax, telling Sax that plaintiff was enduring abuse in the workplace and requesting that Human Resources investigate her allegations and help to rectify the issues.

- In February 2015, Cook accused plaintiff of having an affair with another employee, and threatened to fire any employee who helped plaintiff at work. On February 11, 2015, Cook threatened to terminate plaintiff after plaintiff accepted food from a colleague. Plaintiff reported this incident to Sax and Cook on February 13, 2015.

- Later that month, in February 2015, plaintiff met Cook for dinner, at which point Cook verbally assaulted plaintiff and expressed a desire to harm her.

- On March 4, 2015, Cook came to believe that plaintiff had encouraged Metropolitan Aviation clients to withdraw their money from Metropolitan Aviation's accounts. Cook subsequently sent Mr. Fiorito a text message, suggesting that both plaintiff and Mr. Fiorito find new jobs.

- That same day, on March 4, 2015, plaintiff testified that Cook "charg[ed] at [plaintiff] towards [her desk]," told plaintiff that she "ruined [Cook] and his company," "accus[ed] [plaintiff] of . . . a sexual relationship with [another employee]" and claimed that a client asked for money back because of plaintiff.  Pl. May 15, 2018 Dep. 110:13-111:3. Plaintiff testified that she was "forced out of the building" and left work as result.  *Id.* at 110:20.

- Before leaving the office, plaintiff wrote an email to Sax stating that plaintiff had "filed a concern with the company a few weeks ago" and asking human resources to become involved in the situation.  Mar. 4, 2015 Email from Plaintiff to Sax.

- The parties dispute whether Cook permanently terminated plaintiff and Mr. Fiorito during this incident on March 4, 2015.  On the one hand, plaintiff testified in her deposition that at some point in March 2015, plaintiff was "terminated."  Pl. May 15, 2018 Dep. 142:3-9. Plaintiff also sent (i) an email on May 8, 2015 referring to her "severance agreement" with Metropolitan Aviation and (ii) an email on June 15, 2015 stating that she was "aggressively and wrongfully terminated on March 3rd along with [Mr. Fiorito]" and that after that point, plaintiff "agreed to try helping the company . . . NOT as an employee." June 15, 2015 Email from Plaintiff to Cook.  Sax also testified that it was her understanding that the Fioritos were permanently terminated from Metropolitan Aviation on March 4, 201.  Sax Dep. 199:25-200:5.  On the other hand, plaintiff also testified that "[n]o formal written notice of termination was ever sent out," Pl. May 15, 2018 Dep. 142:3-9.  And, on March 8, 2015, four days after the alleged termination, Cook instructed Sax to reroute emails and phone numbers back to the Fioritos.  Metropolitan Aviation also continued to pay both Fioritos for work performed following March 2015, and Sax testified that employees were frequently fired at Metropolitan Aviation despite the fact that Cook did not intend to terminate the employees permanently.

- In May 2015, Cook called plaintiff while drunk and verbally attacked her, calling her derogatory names, and accusing her of ruining his company.

- In the summer of 2015, Cook drove by the Fioritos' house on several occasions and arrived uninvited to the Fioritos' son's baseball games.

- On June 16, 2015, Cook went to the Fioritos' home while drunk and attacked Mr. Fiorito. Plaintiff fractured her wrist when she tried to break up the fight between the two men.

- Around August or September 2015, Cook apologized to the Fioritos and asked them to return to work full time at the Metropolitan Aviation office.  Both Fioritos then returned to work at the company in September 2015.

- In September 2015, Cook, plaintiff, and several other employees attended a business trip in Cancun, and Cook forced plaintiff to share a room with him.  One night, Cook grabbed plaintiff's phone, threw her phone, accused her of having affairs with other men, and called her derogatory names.  Plaintiff fled to her coworker, Kelly Murphy's ("Murphy"), hotel room and Cook followed.  Plaintiff's coworker texted Mr. Fiorito and told him that

Cook was pounding on the coworker's door and "cussing [plaintiff] out all done [sic] the hall." Sept. 21, 2015 Text Message from Murphy to Mr. Fiorito.

- In December 2015, plaintiff testified that Cook pressured plaintiff to go to his house and then pressured plaintiff to have sex with him. Plaintiff's coworker Trent Riley ("Riley") also observed plaintiff rebuff Cook's physical advances at a holiday party at which point Cook told plaintiff's coworkers that plaintiff was a "w***e." Riley Decl. ¶ 7.

- On January 7, 2016, plaintiff testified that Cook said he would kill plaintiff if plaintiff came into his house, and that later Cook vomited in plaintiff's driveway and told plaintiff that she might not survive their relationship.

- Also in January 2016, plaintiff hired Michele Lanfrank ("Lanfrank") as a contractor to improve Metropolitan Aviation's brand through Facebook and other social media posts.

- In early February 2016, plaintiff and Lanfrank began having disputes over work-related matters.

- On February 2, 2016, plaintiff complained to Cook about his treatment of plaintiff in the workplace.

- On February 4, 2016, Mr. Fiorito sent plaintiff a text message, expressing his concern that plaintiff was "going to get [the couple] fired Again." Feb. 4, 2016 Text Message from Mr. Fiorito to Plaintiff.

- As of February 7, 2016, plaintiff wanted Metropolitan Aviation to terminate Lanfrank.

- On February 8, 2016, plaintiff was locked out of a Metropolitan Aviation computer system.

- Around the same time, in early February 2016, plaintiff began a medical leave of absence from Metropolitan Aviation.

- By mid-February, plaintiff learned that Cook and Lanfrank were involved in a romantic relationship.

- On February 14, 2016, plaintiff texted Cook that she loved Cook, believed in Cook, and was thankful to have Cook in her life. Feb. 14, 2016 Text Message from Plaintiff to Cook. Two days later, plaintiff asked Cook to go to a spa for a day and to go skiing. Plaintiff testified that she sent these text messages to Cook as a means to protect herself from Cook.

- Between February 11 and February 14, 2016, plaintiff sent Cook a series of text messages telling Cook that he did not need Lanfrank, that the company did not owe Lanfrank anything, that Lanfrank had a negative impact on the company, and that Lanfrank was a sociopath.

- By February 19, 2016, plaintiff was stripped of her ability to access email, and locked out of the Metropolitan Aviation building. Around February 23, 2016, plaintiff also learned that Metropolitan Aviation would not be paying her going forward.

- Around the same time, in late February 2016, plaintiff sent a series of text messages to Cook about Metropolitan Aviation and Lanfrank, asking Cook to "get away from [Lanfrank]," and accusing Cook of choosing Lanfrank over plaintiff. Feb. 26-27, 2016 Text Messages from Plaintiff to Cook.

- In early March 2016, plaintiff published a series of Facebook posts about Metropolitan Aviation generally and about Lanfrank in particular. For example, on March 2, 2016, plaintiff called Lanfrank a "vile, toxic, coke addict, desperate sex-for-money w****." Plaintiff Mar. 2, 2016 Facebook Post.

- On March 7, 2016, Cook directed Melanie McCormack ("McCormack"), a Human Resources and Office Management employee at Metropolitan Aviation, to prepare termination letters for plaintiff, Mr. Fiorito, and Murphy. Plaintiff's draft termination letter explained that Cook was terminating plaintiff because her "constant texting, calling, emailing, and posting on social media sites negative comments about the company and its' employees put[] the entire company at risk … ." McCormack Draft Termination Letter for Plaintiff.

- On March 8, 2016, Cook texted Mr. Fiorito and told Mr. Fiorito that plaintiff had threatened to come into the office, causing employees to leave the office. Cook informed Mr. Fiorito that Cook was terminating plaintiff and planning to get a court order "to stop her rants to our staff and social media." Mar. 8, 2016 Text Message from Cook to Mr. Fiorito.

- The next day, on March 9, 2016, Cook sent plaintiff a formal termination letter via Federal Express. Plaintiff received the letter on March 10, 2016.

On July 13, 2016, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was terminated in violation of Title VII. On June 26, 2017, plaintiff and Mr. Fiorito, represented by the same counsel, brought separate actions, both asserting claims under Title VII. In his complaint, Mr. Fiorito asserted one claim of retaliation in violation of Title VII against Metropolitan Aviation. In her amended complaint, plaintiff asserts the six claims at issue here: (i) a Title VII hostile work environment claim against Metropolitan Aviation, Metropolitan Jets, and Metro Aire (ii) a Title VII retaliation claim against Metropolitan

Aviation, Metropolitan Jets, and Metro Aire, (iii) a common law wrongful termination claim against all defendants, (iv) a common law negligence claim against all defendants, (v) a common law negligent hiring and retention claim against Metropolitan Aviation, Metropolitan Jets, and Metro Aire, and (vi) a common law intentional infliction of emotional distress claim against all defendants.

On May 29, 2018, defendants filed the two motions for summary judgment at issue here. Defendants Metropolitan Aviation, Metropolitan Jets, and Cook filed a motion for partial summary judgment on plaintiff's hostile work environment, retaliation, negligence, negligent hiring and retention, and intentional infliction of emotional distress claims. Specifically, defendants Metropolitan Aviation, Metropolitan Jets, and Cook contend (i) that portions of plaintiff's hostile work environment claim are barred by the statutory limitations period and the doctrine of laches, (ii) that plaintiff's retaliation claim fails because the record reveals that plaintiff's protected activity was not the but-for cause of her termination, (iii) that plaintiff's negligence and intentional infliction of emotional distress claims fail because they are displaced by the Virginia Human Rights Act ("VHRA")[3] and the Virginia Workers Compensation Act ("VWCA"),[4] and (iv) that plaintiff's negligent retention claim fails because the tort of negligent retention is inapplicable where, as here, the employee at issue is the sole owner of the company. Plaintiff opposes this motion, arguing (i) that the entirety of plaintiff's hostile work environment claim is timely under the continuing violations doctrine, (ii) that the VHRA and the VWCA do not displace negligence and intentional infliction of emotional distress claims, and (iii) that negligent retention claims can survive against a single member limited liability company. Plaintiff has also filed two Rule 56(d), Fed. R. Civ. P., affidavits, averring that additional

[3] Va. Code. § 2.2-3903(D).

[4] Va. Code § 65.2-101.

discovery of text message communications between Cook and Lanfrank will reveal that Cook's stated reason for terminating plaintiff is pretext for retaliation.

Defendant Metro Aire filed a separate motion for summary judgment with respect to all of plaintiff's claims, arguing that Metro Aire cannot be held liable because Metro Aire and Metropolitan Aviation are not part of an integrated enterprise. Finally, all defendants also jointly filed a motion to consolidate this case with that of plaintiff's husband, Mr. Fiorito.

## II.

The standard of review on motions for summary judgment is too well-settled to warrant extensive discussion. Under Rule 56, Fed. R. Civ. P., summary judgment is appropriate only where there is "no genuine dispute as to any material fact" such that the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists if "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating this question, courts must "view the evidence in the light most favorable to . . . the nonmovant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The nonmovant, however, cannot rely on "mere allegations;" rather, the nonmovant "must set forth specific facts that go beyond the mere existence of a scintilla of evidence." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (internal quotations and citations omitted).

## III.

Defendants Metropolitan Aviation, Metropolitan Jets, and Cook moved for summary judgment with respect to plaintiff's hostile work environment, retaliation, negligence, intentional infliction of emotional distress, and negligent hiring and retention. Each of these claims is addressed in turn.

**A.**

With respect to plaintiff's hostile work environment claim, defendants do not dispute that plaintiff has adduced evidence in support of the existence of a hostile work environment. Instead, defendants argue that plaintiff cannot use evidence of defendant Cook's conduct prior to March 2015 to support her claim because (i) this conduct falls outside the statutory limitations period, and (ii) even assuming this conduct was not time-barred, the doctrine of laches prevents plaintiff from relying on this evidence.

**1.**

To begin with, the parties agree that the relevant statutory limitations period in this case is 300 days—that is, for a claim to be timely, the plaintiff must have filed a charge with the EEOC within 300 days of the allegedly discriminatory action. Defendants argue that much of the conduct plaintiff alleges in support of her hostile work environment claim occurred prior to March 2015, more than 300 days before plaintiff filed her EEOC charge, and as such, that conduct is time-barred. Defendants' argument in this regard is unpersuasive. The Supreme Court has made clear that where, as here, a plaintiff asserts a hostile work environment claim, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" provided that "an act contributing to the claim occurs within the filing period." *Nat'l R&R Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Here, it is undisputed that acts contributing to plaintiff's hostile work environment claim occurred within the relevant limitations period as plaintiff has adduced evidence that Cook harassed her throughout January and February 2016. And importantly, it is clear that this timely conduct is adequately linked to the allegedly discriminatory conduct that occurred outside the applicable statutory limitations period. Cook's allegedly harassing conduct—both prior to and following

March 2015—involved the same type of employment actions—physical and verbal attacks, stalking, accusations related to plaintiff's sexual conduct, and threats of termination. The harassing conduct also occurred relatively frequently, and significantly, was perpetrated by the same individual—Cook. Accordingly, plaintiff is entitled to rely on evidence of Cook's conduct prior to March 2015 in support of her hostile work environment claim.

Defendants attempt to avoid this conclusion by arguing that plaintiff was terminated in March 2015 and that this termination was an intervening discrete act that severed the continuing nature of the hostile work environment at issue here. This argument fails to persuade. To begin with, the record reveals a genuine dispute of material fact as to whether plaintiff was, in fact, terminated in March 2015. On the one hand, plaintiff testified in her deposition that she was terminated at some point in March 2015 and referred to her March termination in emails to Metropolitan Aviation employees. *See* Pl. May 15, 2018 Dep. 142:3-9; June 15, 2015 Email from plaintiff to Cook. On the other hand, plaintiff continued to receive payment from Metropolitan Aviation, continued to work for Metropolitan Aviation, and received access to her email account again just shortly after the alleged termination. Mr. Fiorito Dep. 73:7-22; Mar. 8, 2015 Email from Cook to Plaintiff. And even assuming, *arguendo*, that plaintiff was terminated in March 2015, any such termination is distinguishable from those intervening actions that courts have found sufficient to sever hostile work environment claims. Specifically, courts of appeals have uniformly found that intervening actions only sever continuing violations where the intervening actions are remedial efforts that bring an end to harassment. *See, e.g.*, *Stewart v. Miss. Transp. Com'n*, 586 F. 3d 321, 329 (5th Cir. 2009) (holding that employer's reassignment of employee away from harassing supervisor constituted intervening action sufficient to sever

periods of harassment because harassment ended for period of sixteen months).[5]  By contrast, the undisputed factual record in this case reveals that Cook's alleged termination of plaintiff in March 2015 was not a remedial effort to halt harassment, but rather was Cook's attempt to punish plaintiff for allegedly encouraging clients to leave Metropolitan Aviation and for having a sexual relationship with another employee.  *See* Pl. Dep. 110:13-111:3. And importantly, Cook's alleged termination of plaintiff did not end the harassment—Cook continued to stalk and to harass plaintiff following plaintiff's termination while she worked remotely for Metropolitan Aviation.  As such, the record makes pellucid that the alleged termination in March 2015 was not the sort of intervening action that would sever an otherwise continuing hostile work environment.

In sum, it is clear that Cook's conduct prior to March 2015 contributed to the same hostile work environment as the harassing conduct that occurred throughout early 2016.  Given that plaintiff timely filed her EEOC charge with respect to these acts occurring in early 2016, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Morgan*, 536 U.S. at 117.

### 2.

Defendants next argue that the doctrine of laches partially bars plaintiff's hostile work environment claim.  To prevail on a laches defense, defendants must prove "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."  *Id.* at 121-22.  Defendants contend that plaintiff failed to exercise diligence in

---

[5] *See also, e.g.*, *Vickers v. Powell*, 493 F.3d 186, 199 (D.C. Cir. 2007) (holding that change in management was not intervening action sufficient to sever continuing violation because the change in management was not "in any way intended to address the environment created by [the supervisor's] alleged improprieties"); *Watson v. Blue Circle Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2003) (holding that intervening action by employer was sufficient to sever claim where employers investigated plaintiff's allegations, took remedial action, and thereafter, plaintiff did not have problems with the alleged harasser).

pursuing her claim because she did not file a charge of discrimination in March 2015 even though she had already consulted attorneys and believed at the time that Cook's behavior toward her was discriminatory. Defendants argue that this delay has prejudiced defendants because witnesses such as Sax and Mr. Fiorito cannot clearly remember all the events at issue and because the parties have not retained all potentially relevant evidence from this time period.

Defendants have not satisfied their burden of demonstrating that plaintiff unreasonably delayed the filing of her EEOC charge and that defendants were prejudiced by that delay. Plaintiff's delay of a little more than one year is significantly shorter than the delays that courts have found unreasonable. *See, e.g.*, *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006) (holding that plaintiff could not seek redress for 20 years of harassment).[6] Indeed, at least one court in the Eastern District of Virginia has found that a delay of two-and-a-half years was not sufficient to entitle the defendant to summary judgment on a laches defense. *See Brink v. McDonald*, 2015 WL 1731476, at *5-6 (E.D. Va. Apr. 14, 2015). Although there is no *per se* rule regarding what constitutes unreasonable delay, courts have made clear that where, as here, the delay is relatively short, the defendant must make a fairly strong showing of prejudice to warrant entry of judgment with respect to a laches defense. *Smith*, 338 F.3d at 734 ("[I]n general the decision to apply the doctrine of laches lies on a sliding scale: the longer the plaintiff delays in filing her claim, the less prejudice the defendant must show in order to defend on laches.").

Defendants here have failed to make such a strong showing of prejudice resulting from plaintiff's little more than one year delay. Although Sax and Mr. Fiorito could not remember some specific facts regarding what occurred in 2014 and early 2015, each witness was able to provide several hours' worth of deposition testimony and to produce documents for both parties.

---

[6] *See also Smith v. Caterpillar, Inc.*, 338 F.3d 730, 734 (7th Cir. 2003) (holding that period of eight years was unreasonable delay).

Moreover, defendants' argument regarding the lack of text message evidence from 2014 and 2015 is unpersuasive. Defendant Cook, himself, failed to retain text messages from 2016, 2017, and 2018, well after Cook was on notice of the case. To countenance defendants' view that the absence of text message evidence from a particular time period is so prejudicial as to warrant dismissal of claims regarding that time period would thus necessarily require dismissal of plaintiff's claims 2016, 2017, and 2018 as well. Dismissal, however, is plainly unwarranted given the countless other sources of evidence, including witness depositions and emails.

Given that defendants have failed to carry their burden of showing that plaintiff unreasonably delayed the filing of her EEOC charge and that defendants were prejudiced by that delay, defendants' motion for summary judgment on a laches defense must also be denied.

**B.**

Defendants' also moved for summary judgment on plaintiff's retaliation claim, arguing that plaintiff has not adduced evidence establishing that she was terminated in retaliation for her protected activity. In response to defendants' motion, plaintiff filed two Rule 56(d), Fed. R. Civ. P., affidavits in which her counsel avers that additional discovery is needed for plaintiff to oppose defendants' motion for summary judgment with respect to this claim. Specifically, on June 8, 2018, plaintiff filed a motion to reopen discovery to seek documents and a deposition of defendants' outside technology consultant regarding text message communications between Lanfrank and Cook. In this June 8 motion, plaintiff indicated her belief that this additional discovery would reveal evidence demonstrating that Cook and Lanfrank discussed the true reason for plaintiff's termination, namely retaliation, and that Cook allowed his communications to be destroyed despite knowing that he was obligated to retain the communications. On June 15, 2018, a magistrate judge granted plaintiff's motion to reopen discovery to allow plaintiff to

subpoena the outside technology consultant regarding Cook and Lanfrank's communications.  At this time, plaintiff has taken a deposition of a corporate representative of the outside consultant, who indicated that she had access to additional text messages between Cook and Lanfrank. Plaintiff has received some, but not all, of these additional text message exchanges between Cook and Lanfrank.

Rule 56(d) allows courts to deny a motion for summary judgment where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition … ."  Rule 56(d), Fed. R. Civ. P.  The nonmovant here, plaintiff, has done just this, indicating that defendants have yet to produce relevant text message conversations between Cook and Lanfrank that might reveal direct evidence that Cook terminated plaintiff in retaliation for her protected activity.  These text messages could also suggest that defendants' proffered reason for plaintiff's termination—namely, plaintiff's texts and posts on social media—is pretextual; that is, text messages could reveal that Cook and Lanfrank discussed terminating plaintiff before plaintiff began posting on social media about Metropolitan Aviation. Because these additional text messages might reveal evidence that would affect disposition of the pending summary judgment motion with respect to plaintiff's retaliation claim, it is appropriate to deny defendants' motion at this time.

## C.

Plaintiff's negligence and intentional infliction of emotional distress claims survive because, contrary to defendants' suggestion, these claims are not displaced by either the VHRA or the VWCA.

**1.**

The VHRA, like Title VII, prohibits discrimination against employees on the basis of protected characteristics, including gender. Specifically, the VHRA states that:

> It is the policy of the Commonwealth to (1) safeguard all individuals within the Commonwealth from unlawful discrimination . . . in employment; preserve the public safety, health and general welfare; and further the interests, rights and privileges of individuals within the Commonwealth; and (2) protect citizens of the Commonwealth against unfounded charges of unlawful discrimination.

Va. Code § 2.2-3900(B). The VHRA further provides that "[c]auses of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances. *Id.* § 2.2-3903(D).

The Supreme Court of Virginia has addressed the meaning of this provision of the VHRA in two contexts. In 1999, the Supreme Court of Virginia considered whether this provision bars wrongful termination claims based on a public policy that is reflected in the VHRA where a plaintiff cites to a different Virginia Code section that embodies the same policy. The Supreme Court of Virginia affirmed dismissal of the action, concluding that the VHRA "eliminated a common law cause of action for wrongful termination based on any public policy which is reflected in the VHRA, regardless of whether the policy is articulated elsewhere." *Conner v. Nat'l Pest Control Ass'n*, 257 Va. 286, 290 (1999). The next year, in 2000, the Supreme Court of Virginia addressed the related question whether the VHRA bars causes of action based on conduct that not only violates a policy embodied in the VHRA but also violates a *different* policy embodied elsewhere. In this context, the Supreme Court of Virginia held that the VHRA "does not prohibit a common law cause of action for wrongful termination based on public policies . . . that are not reflected in the VHRA" even where the conduct that is the basis for the cause of

action also violates policies reflected in the VHRA. *Mitchem v. Counts*, 259 Va. 179, 187 (2000), *abrogated on other grounds by Robinson v. Salvation Army*, 292 Va. 666 (2016). In other words, these cases make clear that where a cause of action relies on a violation of a public policy reflected in the VHRA, the cause of action is barred. By contrast, if the cause of action or theory of recovery relies on the violation of a public policy not reflected in the VHRA, that cause of action survives even if the conduct at issue also violates a policy embodied in the VHRA.

These principles, applied here, point persuasively to the conclusion that plaintiff's negligence and intentional infliction of emotional distress claims are not displaced by the VHRA, and as such, defendants' motion for summary judgment in this regard fails. As in *Mitchem*, plaintiff's negligence and intentional infliction of emotional distress claims do not rely on the principles prohibiting unlawful discrimination in the VHRA; rather, plaintiff's claims rely on common law principles—the employer's duty to warn and *respondeat superior*—that are separate and distinct from the VHRA's anti-discrimination policies. Specifically, plaintiff's negligence claim relies on the common law duty of defendants, as employers, to protect or warn employees against the criminal conduct of a third party. *See A.H. v. Rockingham Pub. Co., Inc.*, 255 Va. 216, 220 (1998) (explaining that in some circumstances, employers have a "duty of protecting or warning an employee" with regard to the conduct of third persons). Plaintiff's intentional infliction of emotional distress claim relies on the common law principle of *respondeat superior*, which provides that an employer may be held liable "for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment." *Kensington Assocs. v. West*, 234 Va. 430, 432 (1987) (citing *McNeill v. Spindler*, 191 Va. 685, 694 (1950)). Because these principles relating to an employer's duties to its employees and liability for its employees' actions are not reflected in the VHRA and have

nothing to do with discrimination, plaintiff's claims based on these principles are not displaced by the VHRA. *See Collins v. Franklin*, 142 F. Supp. 2d 749, 751 (W.D. Va. 2000) (rejecting argument that plaintiff's intentional infliction of emotional distress claim was preempted by VHRA because the claim was based on policies not reflected in the VHRA).

In an attempt to avoid this conclusion, defendants cite to *Jackson v. Liberty Univ.*, 2017 WL 3326972, at * 25 (W.D. Va. Aug. 3, 2017). But defendants' reliance on *Jackson* is unavailing; that case is inapposite because the plaintiff there explicitly relied on the VHRA to identify the source of the duty of care owed by the defendant. Put differently, the VHRA's policies were essential to the plaintiff's negligence claim in *Jackson*. Here, by contrast, plaintiff need not rely on the VHRA because plaintiff alleges that defendants' conduct violated common law principles, separate and distinct from the anti-discrimination policies embodied in the VHRA. Accordingly, plaintiff's negligence and intentional infliction of emotional distress claims are not displaced by the VHRA.

## 2.

Defendants next argue that plaintiff's negligence claim is displaced by the VWCA. The VWCA provides exclusive remedies for employees who suffer an "injury by accident arising out of and in course of the employment." Va. Code § 65.2-101. In describing injuries covered by the VWCA, the Supreme Court of Virginia has made clear that the cause of the injury in question must be "an identifiable incident or *sudden precipitating event* . . . that resulted in an *obvious sudden mechanical or structural change in the body*." *Morris v. Morris*, 238 Va. 578, 589 (1989) (citing *Lane Co., Inc. v. Saunders*, 229 Va. 196 (1985)). In this regard, the Supreme Court of Virginia has explained that "injuries resulting from repetitive trauma, continuing mental

or physical stress, or other cumulative events . . . are not 'injuries by accident' within the meaning of Code Sec. 65.1-7." *Id.*

These principles, applied here, make clear that plaintiff's negligence claim is not displaced by the VWCA. The undisputed factual record here reflects that plaintiff's injuries were the result of repetitive trauma, continuing mental and physical stress, and cumulative abuse, not a sudden precipitating event. Accordingly, plaintiff's injuries are not "injur[ies] by accident" within the meaning of the VWCA and are not displaced.

In sum, plaintiff's negligence and intentional infliction of emotional distress claims survive because they are not based on policies reflected in the VHRA and do not arise out of "injur[ies] by accident" within the meaning of the VWCA.

**D.**

Next, defendants contend that plaintiff's negligent retention claim cannot survive summary judgment because (i) a limited liability corporation cannot be held liable for negligent retaining its sole member, and (ii) plaintiff has not adduced evidence that she suffered any physical injury as a result of Cook's conduct. Defendants' arguments fail in both respects.

**1.**

It is well-settled that Virginia law recognizes an independent cause of action for negligent retention of employees based on the principle "that an employer . . . is subject to liability for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm others." *Se. Apartments Mgmt., Inc. v. Jackman*, 257 Va. 256, 260-61 (1999). Defendants argue that plaintiff's negligent retention claim must fail as a matter of law because Cook is the sole owner of Metropolitan

Aviation and Metropolitan Jets, and as such, Metropolitan Aviation and Metropolitan Jets cannot be held liable for failing to fire Cook.

Defendants' argument ultimately fails to persuade. To begin with, defendants point to no Supreme Court of Virginia authority purporting to preclude the application of the negligent retention cause of action to limited liability companies with sole owners or members. Instead, defendant cites to *Glover v. Oppelman*, 178 F. Supp. 2d 622, 644 (W.D. Va. 2001), a Western District of Virginia case in which the court granted the defendant there summary judgment on the plaintiff's negligent retention claim because the defendant was the sole general partner of a limited partnership. The *Glover* court reasoned that the tort of negligent retention "is a mechanism for imputing liability to an employer who conducts business through a dangerous employee" but that where the tortfeasor is the sole member of the employer, "there is no policy need to resort to this legal mechanism to 'get to' the employer." *Id.* Moreover, the *Glover* court expressed concern that to allow a sole general manager of a partnership to be held liable for failing to fire himself "would open the door to negligent retention claims against sole proprietors who manage business themselves instead of hiring outside managers." *Id.*

Yet importantly, other courts have expressly declined to hold that "solely-owned corporation[s] [are] exempt from a state-law negligent retention claim because [they are] owned by the tortfeasor." *Terrell v. OTS Inc.*, 2011 WL 2619080, at *1 (N.D. Ga. July 1, 2011). These courts have reasoned that where an individual makes the decision to shield his personal assets from the corporation and the corporation's assets from himself by incorporating the corporation, he creates two distinct legal entities, and the corporation, as a distinct legal entity, can be held liable for negligently retaining its member. *Id.* To exempt the corporation from liability for negligent retention "would effectively shield a corporation from a state-law claim when the tort-

causing owner/employee refuses to control his or her own conduct and hire an outside manager." *Id.*

In the end, there are policy reasons supporting each approach, but because no Virginia court has carved out an exception to negligent retention claims for single member limited liability corporations, it is inappropriate to extend state law do so here. *See, e.g.*, *Burris Chem., Inc. v. USX Corp.,* 10 F.3d 243, 247 (4th Cir. 1993) ("Under [*Erie*], the federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion."). Accordingly, defendants' summary judgment on this ground must be denied.

**2.**

Alternatively, defendants contend that they are entitled to judgment as a matter of law on plaintiff's negligent retention claim because plaintiff has failed to adduce any evidence of physical injury. Defendants correctly note that courts have required proof of physical injury to support a cause of action for negligent retention. *See, e.g.*, *Wolf v. Fauquier Cty. Bd. of Supervisors,* 555 F.3d 311, 320 (4th Cir. 2000). But defendants mischaracterize the nature of the factual record here when they assert that plaintiff has not adduced any evidence of physical injury. Contrary to defendants' assertions, plaintiff has testified that defendant Cook, in addition to calling her names and verbally abusing her, also physically assaulted her on numerous occasions. For example, plaintiff testified that in June 2015, Cook went to the Fioritos' home inebriated and attacked Mr. Fiorito, and plaintiff testified that she fractured her wrist when she tried to break up the fight between the two men. Pl. Jan. 11, 2018 Dep. 177:11-180:6. Plaintiff also testified that in December 2015, Cook coerced plaintiff into having sexual intercourse with him even though Plaintiff did not want to consent. *See id.* at 169:6-171:9. And finally, plaintiff's co-worker Trent Riley averred that he witnessed Cook grabbing plaintiff by the arm at

work on at least two occasions in 2015 and early 2016. Riley Decl. ¶ 6. Because there is record evidence suggesting that plaintiff suffered physical injuries as a result of Cook's conduct, defendants' motion for summary judgment in this regard must be denied.

## E.

In sum, defendant Metropolitan Aviation, Metropolitan Jets, and Cook's partial motion for summary judgment must be denied because (i) defendant Cook's conduct prior to March 2015 is properly considered as part of plaintiff's continuing hostile work environment, (ii) discovery of Cook and Lanfrank's text messages might reveal additional evidence that Cook's stated reason for terminating plaintiff is pretext for retaliation, (iii) neither the VHRA nor the VWCA displaces plaintiff's intentional infliction of emotional distress and negligence claims, and (iv) there is no Virginia law supporting the notion that defendants cannot be held liable for negligent retaining Cook as the sole member of a limited liability corporation.

## IV.

Plaintiff asserts the same six Title VII and Virginia law claims against Metro Aire under an integrated enterprise or single employer theory of liability. Defendant Metro Aire separately moves for summary judgment on each of these claims, arguing that plaintiff has failed to adduce evidence that Metro Aire and Metropolitan Aviation constitute an integrated enterprise.

An integrated enterprise theory of liability may be invoked by an employee

who is technically employed on the books of one entity, which is deemed to be part of a large 'single-employer' entity, [to] impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated enterprise.

*Wright v. Mountain View Lawn Care, LLC*, 2016 WL 1060341, at *21 (W.D. Va. Mar. 11, 2016). In determining whether an integrated enterprise exists, courts generally consider the following factors: "(1) common management; (2) interrelation between operations; (3)

centralized control of labor relations; and (4) degree of common ownership/financial control." *Hukill v. Auto Care, Inc*., 192 F.3d 437, 442 (4th Cir. 1999), *abrogation on other grounds recognized by Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404 (4th Cir. 2015). At the same time, the Fourth Circuit has recognized that courts "need not adopt such a mechanical test in every instance"[7] as the fundamental purpose of the test is to help courts "determine what entity made the final decisions regarding employment matters related to the person claiming discrimination." *Hukill*, 192 F.3d at 442 (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)).

These principles, applied here, point persuasively to the conclusion that Metro Aire and Metropolitan Aviation are not an integrated enterprise for the purposes of plaintiff's employment discrimination claims. To be sure, the undisputed factual record reveals that Metro Aire and Metropolitan Aviation have interrelated operations and overlapping employees—Metro Aire has served as a "conduit" helping Metropolitan Aviation make connections with potential clients, Metropolitan Aviation has deposited funds in Metro Aire's bank accounts, and Lanfrank, a former employee of Metropolitan Aviation, is the sole member and owner of Metro Aire. But these factors are not controlling here because significantly, Metro Aire did not exist until January 2017, almost one year *after* the last of the allegedly discriminatory acts against plaintiff occurred. Given that Metro Aire did not exist at the time plaintiff was subject to discrimination, it cannot seriously be argued that Metro Aire "made the final decisions regarding employment matters related to [plaintiff]." *Hukill*, 192 F.3d at 442. As such, Metropolitan Aviation and Metro Aire are not an integrated enterprise for purposes of plaintiff's employment discrimination claims.

---

[7] *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 n. * (4th Cir. 1987).

The cases cited by plaintiff do not alter this conclusion. These cases are inapposite because each of the cases involves members of an integrated enterprise, all of which existed at the time of the alleged discrimination. *See, e.g.*, *Johnson*, 814 F.2d 978 at 978 (parent company owned subsidiary before plaintiffs were hired by subsidiary).[8] Notably, plaintiff fails to cite to a single case holding a newly-formed member of an integrated enterprise liable for the actions that another member took prior to the formation of the new member. Put simply, unlike the cases plaintiff cites, Metro Aire could not have made the final decisions regarding plaintiff's termination and the allegedly hostile work environment plaintiff experienced because Metro Aire did not exist until after plaintiff was terminated from Metropolitan Aviation.

In an attempt to avoid this conclusion, plaintiff argues that Cook and Lanfrank formed Metro Aire in an effort to hide assets from Metropolitan Aviation's creditors and as such, Metro Aire and Metropolitan Aviation are properly considered an integrated enterprise for Title VII purposes. But, as explained above, the Fourth Circuit has made clear that the "integrated enterprise" theory of liability is meant to allow plaintiffs "to determine what entity made the final decisions regarding employment matters related to the person claiming discrimination." *Hukill*, 192 F.3d at 442.[9] This theory of liability is not intended as a tool for plaintiffs to seek additional assets from a technically judgment-proof defendant as other mechanisms exist to address any such concerns. *See, e.g.*, Va. Code §§ 55-80 (providing that conveyances made with

---

[8] *See also, e.g.*, *Deapoli v. Vacation Sales Assocs., LLC*, 425 F. Supp. 2d 709, 712 (E.D. Va. 2005) (subsidiary and parent company existed together at time of defendants' allegedly unlawful activity) ; *EEOC v. Ecurie Alford, Ltd.*, 1993 U.S. Dist. LEXIS 21735, at * 15 (E.D. Va. July 15, 1993) ("Thus, the facts show that the Alford Corporation, Beau Shane, and its successor, Ecurie Alford, were an integrated enterprise *at the time of* Mrs. Faillers' discharge." (emphasis added)).

[9] This theory of liability is also often used to show that a defendant meets Title VII's definition of an "employer" because the defendant is a member of an integrated enterprise that has fifteen or more employees. *See, e.g.*, *Wright*, 2016 WL 1060341, at *21.

the "intent to delay, hinder or defraud . . . persons . . . of what they are lawfully entitled to shall . . . be void.").

In sum, Metro Aire and Metropolitan Aviation cannot be considered an integrated enterprise for the purposes of imposing Title VII liability because Metro Aire did not exist at the time that Metropolitan Aviation allegedly discriminated against plaintiff. Given this, it is indisputable that Metro Aire did not "ma[ke] the final decisions regarding employment matters related to [Plaintiff]." *Hukill*, 192 F.3d at 442. Accordingly, defendant Metro Aire's motion for summary judgment must be granted.

## V.

Defendants' have also moved to consolidate this action with that of Mr. Fiorito. Before resolution of the question whether plaintiff's and Mr. Fiorito's actions should be consolidated for trial, it is necessary to summarize briefly Mr. Fiorito's claim. Mr. Fiorito has asserted one claim of Title VII retaliation against Metropolitan Aviation, Metropolitan Jets, and Cook. Specifically, the factual record reveals that on March 9, 2016, the day Cook sent plaintiff's termination letter, plaintiff filed for a protective order against Cook, averring that she was being subjected to sexual harassment, assault, and stalking by Cook. The court granted plaintiff's request for a protective order, and the order was served on Cook two days later on March 11, 2016. Mr. Fiorito argues that he ultimately was terminated in retaliation for the of his protected activity wife, plaintiff here—namely her filing for a protective order on March 9, 2016.

Rule 42(a), Fed. R. Civ. P. provides that consolidation of actions is appropriate where the actions "involve a common question of law or fact[.]" The Fourth Circuit has made clear that in considering a motion to consolidate, courts must evaluate

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties,

witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982). Notably, the decision whether to consolidate actions is solidly within the discretion of the district court. *See R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 959 (4th Cir. 1999) (noting the discretion of the district court under Rule 42(a)).

Consideration of these factors reveals that consolidation is appropriate in this case. To begin with, plaintiff's and Mr. Fiorito's claims involve many common issues of fact. Plaintiff here is the estranged spouse of Mr. Fiorito, the plaintiff in the currently separate action. Both complaints arise out of the respective plaintiffs' overlapping periods of employment with Metropolitan Aviation from approximately 2012 until 2016. Specifically, plaintiff has adduced evidence to suggest that she was subjected to a hostile work environment and wrongfully terminated by Cook, the CEO of Metropolitan Aviation, as a result of plaintiff's and Cook's failed sexual relationship. And, as described above, Mr. Fiorito has adduced evidence that around the same time plaintiff was terminated, plaintiff filed for a protective order against Cook and shortly thereafter, Mr. Fiorito was also terminated. Thus, in essence, both actions involve alleged discrimination and wrongful termination by the same individual—Cook—for the same fundamental reason—Cook's failed relationship with plaintiff.

And importantly, these overlapping facts are essential to the resolution of the claims in each case. Notably, Mr. Fiorito's retaliation claim depends on the jury finding that plaintiff engaged in protected activity when she filed for the protective order. To engage in protected activity, an individual must reasonably believe that he or she is opposing unlawful employment activity. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015) (finding that to be

protected under Title VII, the plaintiff's activity must "concern[] subject matter that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful." (internal citations and quotation marks omitted)). Thus, to prevail at trial, Mr. Fiorito must prove that when plaintiff filed for a protective order, she reasonably believed that she was opposing unlawful employment activity. In this respect, evidence regarding the hostile work environment plaintiff was allegedly enduring at Metropolitan Aviation and plaintiff's ever-changing relationship with Cook is directly relevant to whether plaintiff reasonably believed she was opposing unlawful activity when she filed for a protective order. Indeed, Mr. Fiorito, himself, relied in large part on this evidence of the history of plaintiff's and Cook's relationship in opposing defendants' motion for summary judgment in that case. *See David Fiorito v. Metropolitan Aviation, et al.*, No. 1-17-cv-730 (E.D. Va. Feb. 9, 2018) (Doc. 54 at 10-14). In sum, a review of the factual record in both cases makes clear that there are several overlapping issues of fact that are directly relevant, and indeed essential to, the resolution of the claims in each case.

Moreover, any specific risks of prejudice and possible confusion associated with consolidation are outweighed by the burdens on parties of conducting separate trials. On the one hand, the risk of prejudice or confusion among the jurors is minimal. Plaintiff contends that there is a danger of prejudice given (i) that Mr. Fiorito and plaintiff have raised different claims for relief and (ii) that different standards govern plaintiff's and Mr. Fiorito's respective claims. But this argument is unpersuasive because juries routinely consider and apply the different standards applicable in discrimination and retaliation cases. *See, e.g.*, *Certain v. Potter*, 330 F. Supp. 2d 576, 581 (M.D.N.C. 2004) (jury verdict entered in favor of plaintiff on Title VII retaliation and hostile work environment claims); *Triplett v. N.C. Dep't of Pub. Safety*, 2017 WL

3840422, at *1-2 (W.D.N.C. Sept. 1, 2017) (noting that jury found in favor of plaintiff on Title VII hostile work environment claim but not on Title VII retaliation claim); *Waldo v. Consumers Energy Co*., 726 F.3d 802, 812 (6th Cir. 2013) (noting that jury returned verdict in favor of plaintiff on Title VII retaliation and hostile work environment claims). As such, plaintiff has not demonstrated that consolidation would risk prejudice and confusion among jurors that could not be remedied by properly instructing the jury as to the law applicable to each of the plaintiff's claims.

On the other hand, to conduct these trials separately would impose a significant burden on the parties, witnesses, and available judicial resources. Significantly, several of the witnesses overlap—both trials will likely involve testimony from Cook, Lanfrank, plaintiff, Mr. Fiorito, and McCormack. Although there may be other witnesses relevant only to one case, the bulk of the testimony will likely originate from these overlapping witnesses. And, as described above, the content of the testimony is likely to overlap substantially as Mr. Fiorito, in his summary judgment briefing, indicated that the history of plaintiff's relationship with Cook is relevant to Mr. Fiorito's retaliation claim. Thus, to conduct these trials separately would result in the repetition of the same evidence twice, and in so doing, would significantly tax judicial resources and an already crowded trial docket.

Given that there are several, essential overlapping issues of fact in both Mr. Fiorito's and plaintiff's cases and any specific risk of prejudice or confusion is significantly outweighed by the burden on the parties, witnesses, and judicial resources, it is appropriate to consolidate these two actions for trial. *See Harris v. L & L Wings,* 132 F.3d 978, 981 n.2 (4th Cir. 1997) (noting that claims of sexual harassment by two former employees, "brought against the same defendant,

relying on the same witnesses, alleging the same misconduct, and answered with the same defenses, clearly meet [the consolidation] standard.").

An appropriate Order will issue.

Alexandria, Virginia
August 3, 2018

T. S. Ellis, III
United States District Judge